UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEFFAN KINCAID DEWALD                                    PLAINTIFF

v.                          4:16-CV-00155-JLH/JTR

DR. GARRY STEWART                                         DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

On March 21, 2016, Plaintiff Steffan Kincaid Dewald ("Dewald") filed this *pro se* § 1983 action alleging that, while he was in the Faulkner County Detention Center ("FCDC"), Defendant Dr. Garry Stewart ("Dr. Stewart") failed to provide him with constitutionally adequate medical care for a broken jaw Dewald suffered during a fight with another inmate. *Docs. 2, 3, & 7.*

Dr. Stewart has filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts. *Docs. 28-30.* Dewald has not filed a Response to the Motion for Summary Judgment or a Statement of Disputed Facts, and the time for doing so has expired.[1] For the following reasons, the Court recommends that Dr. Stewart's Motion for Summary Judgment be granted, and that this case be dismissed, with prejudice.

## II. Facts

Before addressing the merits of Dr. Stewart's Motion for Summary Judgment, the Court will set forth the relevant facts, all of which are now deemed to be admitted:[2]

---

[1] The Court granted Dewald two extensions of time to respond. *Docs. 32, 35.*

[2] Pursuant to Local Rule 56.1 of the Local Rules for the Eastern and Western Districts of Arkansas, "[a]ll material facts set forth in the statement filed by" Dr. Stewart are deemed admitted. *See also Jackson v. Ark. Dep't of Educ., Vocational & Technical Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. Cir.2001), *cert. denied*, 536 U.S. 908 (2002) (citing Arkansas Local Rule 56.1(c) in

1. On February 1, 2016, Dewald, while a pretrial detainee,[3] was involved in a fight that resulted in an injury to his right lower jaw. *Doc. 30 at ¶ 1.*

2. On February 2, 2016, Dewald was seen in the FCDC clinic. The treatment notes reflect that Dewald had edema to the left lateral orbit and right lower jaw and that his teeth were not lining up. Dr. Stewart was notified of the incident and provided with a photo. *Doc. 30 at ¶ 1.*

3. Later that same day, February 2, 2016, Dewald was taken to the Conway Regional Medical Center Emergency Room. Dewald was diagnosed with a mandibular fracture and discharged with instructions to take Tylenol for pain management and to follow up with his primary care physician. He was instructed to sleep on his back and to avoid putting pressure on his jaw. *Doc. 30 at ¶ 3; Stewart Aff., Doc. 30-3 at ¶ 6.*

---

concluding that the plaintiff "forfeited her ability to contest the facts presented" by defendant by failing to respond to the defendant's motion for summary judgment).

[3] According to the publicly accessible website operated by Arkansas' Administrative Office of the Courts, on February 13, 2017, Dewald pled guilty to sexual assault in the second degree and battery in the second degree. *See* https://caseinfo.aoc.arkansas.gov/cconnect/PROD/public/ck_public_qry_main.cp_main_idx. (accessed on May 18, 2017).

Dewald's apparent status as a pre-trial detainee at the time his inadequate medical care claim in this case arose means the Fourteenth Amendment's Due Process Clause applies instead of the Eighth Amendment Cruel and Unusual Punishment Clause, which protects convicted inmates. Since the Eighth Circuit applies the same deliberate indifference standard under both constitutional provisions, Dewald's apparent status as a pre-trial detainee, instead of a convicted inmate, is of little practical significance. *See Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

4. On February 25, 2016, Dewald filed two medical requests regarding his jaw injury. He claimed his jaw had shifted and might be infected. *Doc. 30 at ¶ 4.*

5. On February 26, 2016, Dewald filed two more medical requests regarding his jaw injury. *Doc. 30 at ¶ 5.*

6. On March 3, 2016, Dr. Stewart saw Dewald for jaw pain. Dr. Stewart diagnosed Dewald with a *stable, non-displaced jaw fracture*. Dr. Stewart prescribed 800 mg of Ibuprofen twice daily and referred Dewald to an oral surgeon. *Doc. 30 at ¶ 7.*

7. On March 6, 2016, Dr. Stewart sent Dewald's medical records to an oral surgeon for review and an opinion. The oral surgeon did not respond to Dr. Stewart. *Doc. 30 at ¶ 9.*

8. On March 7, 2016, Dewald filed a Medical Request Form regarding his jaw injury, complaining that he was "spitting up bone spurs." On March 8, 2016, an FCDC official responded: "Dr. Stewart has asked a bone doctor to review your chart and they will come up with a plan - you are not forgotten." *Doc. 30 at ¶ 10; Doc. 2 at pp. 8-9.*

9. On March 7, 2016, Dewald filed a grievance complaining that nothing was being done about his jaw and that it had not been either "wired shut" or "plated and screwed." On March 8, 2016, an FCDC official responded: "The doctor is consulting with an oral surgeon concerning your condition - when the doctors make

a decision we will let you know." *Doc. 30 at ¶ 10; Doc. 2 at p. 10*.

10. On March 10, 2016, Dewald filed a grievance regarding his jaw. On March 13, 2016, an FCDC official responded and advised Dewald:

> You were sent for xray, you have been seen by the nurse and seen by the doctor, he has consulted an ortho/oral surgeon to come up with a plan.

*Doc. 30 at ¶ 11; Doc. 30-1 at p. 1; Doc. 2 at p. 7.*

11. On March 12, 2016, Dewald filed a medical request complaining that the prescription Ibuprofen was not controlling the pain and that he needed a different pain medication. On March 16, 2016, an FCDC official responded: "Since your pain is not improving, ibuprofen will be discontinued and you will start on Naproxen. Let us know if it helps." *Doc. 30 at ¶ 12; Doc. 2 at pp. 11-12.*

12. On March 17, 2016, Dewald filed a medical request asking to see a nurse about his jaw. Dewald was scheduled to see Dr. Stewart on the next available appointment on March 18, 2016. *Doc. 30 at ¶ 13.*

13. On March 18, 2017, Dewald's jaw was x-rayed. It indicated a minimally displaced fracture of his right jaw with no dislocation and no callous formation. *Doc. 30 at ¶ 14.*

14. On March 21, 2016, Dewald filed the Complaint in this action, naming Dr. Stewart as the sole Defendant. Dewald alleged that his pain was not improving and that he had not "heard anything about surgery from Dr. Stewart." *Doc. 2.*

15. On March 22, 2016, Dr. Stewart saw Dewald. Dr. Stewart diagnosed Dewald with a stable non-displaced right mandibular fracture with very poor oral hygiene. Dr. Stewart prescribed antibiotics and directed Dewald to improve his oral hygiene. *Doc. 30 at ¶ 15.*

16. On March 29, 2016, Dewald's medical records were sent to Delta Dental (UAMS) for consultation. *Doc. 30 at ¶ 18.*

17. On March 31, 2016, Dewald was seen by Dr. Jones, an oral surgeon, based on Dr. Stewart's referral request. Dr. Jones found Dewald's healing to be satisfactory "despite lack of immobilization." Dr. Jones' plan was to manage by observation and to check Dewald's progress again in 3 to 4 weeks. *Doc. 30 at ¶ 19; Doc. 30-4 at p. 92.*

18. On April 4, 2016, Dewald filed a medical request asking why he had not had surgery on his jaw and complaining that his pain was not being adequate managed by the Naproxen. *Doc. 30 at ¶ 20; Doc. 7 at p. 4-5.*

19. On April 7, 2016, Dr. Stewart reviewed Dewald's medical records and made telephone contact with UAMS oral surgeon Dr. John Jones. Dewald's plan of care was described as conservative nonsurgical care for a non-displaced fracture to allow for natural healing via secondary intention. *Doc. 30 at ¶ 22.*

20. On April 11, 2016, Dewald filed a grievance about his jaw. He was advised that he was scheduled to see the doctor that week. *Doc. 30 at ¶ 22.*

21. On April 12, 2016, Dewald filed an Amended Motion for Preliminary Injunction requesting a Court Order directing Dr. Stewart to provide "immediate surgery for his broken jaw." *Doc. 7.*

22. On April 14, 2016, Dr. Stewart saw Dewald in the FCDC clinic. Dr. Stewart found that Dewald's condition was stable with excellent healing of his jaw and much improved oral hygiene. *Doc. 30 at ¶ 23.*

23. On April 21, 2016, Dr. Jones saw Dewald again. Dr. Jones performed a "fixation" of Dewald's jaw.[4] *Doc. 30 at ¶ 25.*

### III. Discussion

Dr. Stewart argues that he is entitled to summary judgment on the inadequate medical care claim Dewald has asserted against him.[5] The Court agrees.

Dewald alleges that Dr. Stewart, who is sued in both his official and individual

---

[4] In his Affidavit, Dr. Stewart states that Dr. Jones told him that he provided this treatment as a "courtesy" at Dewald's request rather than any medical need for healing or stability. *Doc. 30 at ¶ 25.*

[5] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011); *see also Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) ("Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim.").

capacities, failed to provide him with adequate medical care to treat his broken jaw. He seeks an award of compensatory and punitive damages, as well as injunctive relief.

To proceed to trial on his inadequate medical care claim, Dewald must have evidence demonstrating that: (1) he had an objectively serious medical need; and (2) Dr. Stewart subjectively knew of, but was deliberately indifferent to, that serious medical need. *See Saylor v. Nebraska,* 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). As to the second prong of that test, it is clear that proving "deliberate indifference" requires more than evidence of negligence, or even gross negligence, and that a prisoner's mere disagreement with the course of care prescribed by his physician is *not* a sufficient evidentiary basis to prove "deliberate indifference." *Id.*; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Instead, deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Dewald has failed to produce *any evidence* demonstrating that Dr. Stewart was deliberately indifferent to his need for medical treatment for his fractured jaw. To the contrary, it is undisputed that Dr. Stewart: (1) promptly examined Dewald when he complained of issues with his jaw, relied on x-rays to support his medical

8

opinion that Dewald had a stable non-displaced fracture of his right jaw, with no dislocation, which would heal properly without the need for fixation or surgery; (2) referred Dewald to an oral surgeon for another opinion; (3) prescribed multiple medications to treat Dewald's complaints of pain; (4) later, diagnosed Dewald with a stable non-displaced jaw fracture; (5) took prompt action to arrange for Dewald to be seen by a consulting oral surgeon; (6) followed the oral surgeon's instructions to manage the injury by observation and to have Dewald return within three to four weeks; and (7) in his last examination of Dewald's right jaw, on April 14, 2016, concluded that the injury was stable, *with excellent healing*. This *undisputed course of care* does not constitute deliberate indifference. *See Logan v. Clarke*, 119 F .3d 647, 649–50 (8th Cir.1997) (finding no deliberate indifference where prison doctors treated the prisoner on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner"); *Kayser v. Caspari* 16 F.3d 280, 281 (8th Cir. 1994) (finding no deliberate indifference when the defendants did not "ignore [the prisoner's] allegations of pain" and provided him with "an escalating level of treatment for [his] aliments over time").

Dewald's primary complaint appears to be that he was not provided surgical treatment for his broken jaw *before* April 21, 2016, when Dr. Jones' performed a fixation.[6] In his Affidavit, Dr. Stewart states that Dr. Jones told him he provided

---

[6] Medical science recognizes that surgical fixation is not required to treat every fractured

9

the fixation "as a courtesy," based on Dewalds' assertion that he wanted it, rather than for any medical need for healing or stability. Dewald has not controverted this assertion by Dr. Jones. When Dr. Jones initially examined Dewald, on March 21, 2016, he found continued healing would take place *without the need for fixation*. This medical finding by Dr. Jones directly and independently supports his later statement to Dr. Stewart that he performed the fixation on April 21, 2016 simply to satisfy Dewald's demand for that simple, non-invasive medical procedure. Finally, even if the Court were to reject this statement by Dr. Jones as inadmissible hearsay, the other undisputed facts overwhelmingly establish that Dr. Stewart provided adequate medical care to Dewald for his injured right jaw.

To the extent Dewald is asserting a claim that Dr. Stewart somehow delayed his surgical treatment by Dr. Jones, Dewald must provide evidence to demonstrate he was harmed by the alleged delay in treatment. *Gibson*, 433 F.3d at 646 (8th Cir. 2006) (explaining that, to avoid summary judgment on a delay in medical care claim, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same). Here, no such evidence,

---

jaw. *See* http://www.merckmanuals.com/professional/injuries-poisoning/facial-trauma/fractures-of-the-mandible-and-midface (accessed May 16, 2017) ("For a fractured mandible, treatment ranges from soft diet alone to maxillomandibular fixation (wiring the jaw shut), rigid open fixation, or both.").

medical or otherwise, exists, and even it did, at most it might support a negligence claim against Dr. Stewart – but not an inadequate medical care claim under § 1983, which would require Dewald to come forward with evidence of "deliberate indifference." *See Langford*, 614 F.3d at 460; *Gibson*, 433 F.3d at 646.

Dewald's allegations in his pleadings amount to nothing more than a disagreement with Dr. Stewart over the medical treatment he provided. The law is well settled that a prison doctor remains free to exercise his or her independent professional judgment, and an inmate is not entitled to any particular course of treatment. *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008). Dewald has not presented any evidence that the "course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference." *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (omitting internal quotations). To survive summary judgment, Dewald "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded [his] needs by administering an inadequate treatment." *Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007) (omitting citation). He has not done so.

### IV. Conclusion

Because Dewald has not produced any evidence of deliberate indifference, Dr. Stewart is entitled to summary judgment.

IT IS THEREFORE RECOMMENDED THAT:

Dr. Stewart's Motion for Summary Judgment *(Doc. 28)* be GRANTED, and Dewald's Complaint be DISMISSED, WITH PREJUDICE.

Dated this 18th day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE